## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **LEE TOURGEE, on behalf of** | § | |
| **himself, and all others similarly situated** | § | **Case No. 1:20-cv-902** |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | **Judge: _____** |
| | § | |
| **UNITED SPECIALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | **JURY TRIAL REQUESTED** |
| *Defendant.* | § | |

## CLASS ACTION COMPLAINT

Comes now, Lee Tourgee, on behalf of himself, and all others similarly situated ("Plaintiffs"), by and through the undersigned counsel, and files this Class Action Complaint against United Specialty Insurance Company ("USIC" or "Defendant") and alleges as follows:

### INTRODUCTION

1.      This is a class action for breach of an insurance contract whereby Plaintiffs seek to recover amounts for the loss of use of ski passes insured by Defendant. Upon information and belief, Defendant is refusing to reimburse or refund Plaintiffs for the loss of use of ski passes as required under the written provisions of the insurance policy (which are materially the same as the policies held by all members of the proposed class).

2.      Plaintiffs purchased insurance from Defendant to protect themselves against the possible risk of not being able to use purchased ski passes. The insurance policy expressly provides coverage for Plaintiffs who were not able to use the ski passes due to a covered peril, and the policy expressly states a quarantine is a covered peril.

3.     Further, the policies represent to refund Plaintiffs for the cost of their ski pass minus the applicable daily rate or pro-rata reduction for each day that Plaintiff used their ski pass during the 2019/2020 ski season.

4.     Defendant is in material breach of the policy by failing to refund Plaintiffs who were unable to use their ski passes for reasons related to the COVID-19 pandemic.

5.     Defendant has caused material harm to Plaintiffs by improperly failing to make payment.

6.     As a result, Plaintiffs now bring this action against USIC for its failure to honor its obligations under the insurance policies issued to Plaintiffs. Plaintiffs seek to recover compensatory damages as well as declaratory and injunctive relief.

## PARTIES

6.     Plaintiff Lee Tourgee is a citizen of the United States domiciled in Austin, Texas in Travis County. Mr. Tourgee purchased a policy from Defendant in the 2019-2020 ski season for ski pass insurance.

7.     Defendant USIC is a property casualty insurance company incorporated under the laws of the State of Delaware with its principal place of business in the State of Delaware at 160 Greentree Drive, Suite 101, Dover, DE 19904. Defendant conducts substantial business throughout the United States, and specifically in the state of Texas.

## JURISDICTION AND VENUE

8.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d)(2), because this is a class action in which at least one member of the class is a citizen of a state different from Defendant, the amount in controversy exceeds $5 million exclusive of interest and costs, and the

proposed class contains more than 100 members.

9.     This Court has personal jurisdiction over USIC pursuant to the "long arm statute" because USIC has submitted to jurisdiction in this state by: (a) Defendant conducts substantial business throughout the United States, and specifically transacting business in the state of Texas; (b) contracting to insure a person located within Texas at the time of contracting; and (c) making a contract substantially connected with Texas. In addition, USIC exercises significant, substantial, systematic, pervasive and continuous contacts with Texas by doing business in Texas, serving insureds in Texas and seeking additional business in Texas.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant does substantial business in this District and a substantial part of the events or omission giving rise to Plaintiffs' claims took place within this District.

## CLASS ACTION ALLEGATIONS

11.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:

12.     All persons who purchased both an Epic Pass for the 2019/2020 ski season and purchased from Defendant pass insurance on their Epic Pass, but were denied coverage for the loss of use of their passes after the resorts closed on March 15, 2020 due to no fault of their own.

13.     Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiffs' counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

14.     Plaintiffs' claims satisfy the numerosity, typicality, adequacy, commonality and

3

superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

15.     The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable. Defendants have hundreds of thousands of customers nationwide that purchased insured ski passes that have not been refunded. Accordingly, members of the Class are so numerous that their individual joinder herein is impracticable.

16.     Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

17.     There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

A)     Whether the order and directive from the CEO for Vail Resorts closing all its resorts in the United States constituted a quarantine under the terms of the Policy because it was "an unforeseen event, occurrence, or circumstance" that restrained class-members from entering upon and using the facilities of Destination Resorts for the purposes permitted by the Epic Pass;

B)     Whether governmental orders applicable to class members were an "unforeseen event, occurrence, or circumstance" that constituted a quarantine by restraining class members from traveling to Destination Resorts, engaging in activities, and using the Epic Pass for its intended purpose;

C)     Whether Defendant breached the terms of the Class Policies;

D)     Whether the class sustained damages as a result of Defendant's breaches of contract;

E)     Whether the class is entitled to damages, restitution, and/or other equitable relief; and

F)      Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

18.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

19.     Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased ski pass insurance policies containing the same or similar terms including, in particular, what constitutes a Covered Peril.

20.     Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because his interests are aligned with, and not antagonistic to, those of the proposed class, and she is represented by counsel who are experienced and competent in the prosecution of class action litigation, and have particular expertise with class action litigation on behalf of purchasers of insurance policies.

21.     Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

## FACTUAL BACKGROUND

### Introduction

22.    Defendant USIC provides season ski pass insurance coverage whereby it promises its insureds coverage against loss of use of the insured's season ski pass.

23.    Upon information and belief, Defendant USIC provides this insurance service to customers of Vail Corporation d/b/a Vail Resorts Management Company ("Vail Resorts"), a North American company that operates more than 34 ski resorts throughout the United States. Vail Resorts sells "Epic Passes" directly to consumers promising access to skiing and snowboarding at its resorts. Customers can purchase annual, weekly, or daily Epic Passes in advance.

24.    Vail Resorts offered Epic Pass insurance through Defendant USIC for customers that wished to mitigate the risk that they may be unable to realize the full use of their Epic Pass for reasons outside of their control. Upon information and belief, thousands of customers purchased optional pass insurance through USIC.

25.    Prior to the 2019/2020 ski season, Class Plaintiff Lee Tourgee purchased an Epic Pass and Epic Pass insurance through Defendant. Plaintiff purchased the Epic pass with the understanding that he would be able to access Vail Resorts from October 2019 through the end of the season. To ensure he would be able to get a refund if he was unable to use the pass, Mr. Tourgee opted to pay an additional fee for pass insurance.

26.    On March 15, 2020, Vail Resorts announced that it was closing all of its mountain resorts indefinitely.  Subsequently, Vail Resorts announced that its "North American resorts and retail stores will remain closed for the 2019-20 winter ski season."[1] Rob Katz, chairman and chief executive officer of Vail Resorts, explained the company was ending the skiing season early due

---

[1] https://www.snow.com/info/covid-19-update (last accessed May 14, 2020).

to the fast-moving situation involving COVID-19. *Id.*

27.    The COVID-19 outbreak devasted millions of citizens across the nation.   The President of the United States, the Governor of Texas and other states all issued various orders, limiting human contact and restricting travel and activities to only those considered essential. Skiing and snowboarding are considered non-essential activities.

28.    As a result of the closures and quarantine related restrictions, Plaintiff was restrained from entering upon and using the facilities of any of the Vail Resort properties and deprived of the use of his Epic Pass.

29.    On June 9th 2020, Plaintiff timely provided notice and made a claim to American Claims Management, Inc. ("ACM"), the third-party claims administrator for the Pass Insurance Program.

30.    As of the date of this filing, ACM still has not issued Plaintiff a formal denial letter for his claim. ACM has not reached out to Plaintiff requesting any additional documentation. Neither ACM nor USIC has responded to Plaintiff regarding his insurance claim and request for reimbursement.

31.    However, Vail resorts have changed their entire insurance coverage for the 2020/2021 ski pass season, calling the new coverage "Epic Coverage."[2] Epic is also attempting to offer partial credits to 2019/2020 ski pass purchasers but only on the condition they purchase a 2020/2021 ski pass.[3]

**The Class Policy**

32.     Plaintiffs purchased insurance from Defendant to protect against the risk of not

---

[2] https://www.epicpass.com/info/epic-coverage.aspx
[3] https://www.epicpass.com/info/2019-2020-pass-holder-credit.aspx

being able to use the ski passes. A true and accurate copy of the Certificate of Season Ski Pass Insurance ("Certificate" or "Policy") is attached hereto as **Exhibit A** and is incorporated herein by reference.

33.    The terms of the Policy were not subject to individual negotiation, and upon information and belief are materially the same for all policy owners ("Class Policy").

34.    Plaintiffs are the owners of a Class Policy, which was in force at the time of the alleged loss.

35.    Defendant is the liable insurer under the Class Policy.

## Terms of the Policy

36.    The Policy and Class Policy offers the following coverage:

> **PROPERTY INSURED AND COVERAGE LIMITS**:
> We cover the Season Ski Pass Cost you paid. We cover you against the risk of not being able to use your Season Ski Pass due to a covered peril. We will reimburse you for the Season Ski Pass Cost minus the applicable Daily Rate or Pro- Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that you have used your Season Ski Pass during the Ski/Snowboard Season.

37.    The Policy and Class Policy defines a "Covered Peril" as follows:

> **PERILS INSURED AGAINST**: Subject to the Exclusions and Coverage Limits, the Insured has coverage against Loss of use of your Season Ski Pass if caused by any one of the following unforeseen perils occurring after the effective date of coverage:
> a)  Sickness, Injury or death of you or a family member;
> b)  You have a Pregnancy or Childbirth verified by medical records; coverage is included for pregnant Season Ski Pass Holder's spouse of domestic partner and minor child;
> c)  Your primary residence being made Uninhabitable by Natural Disaster;
> d)  The Destination Resort closes indefinitely due to a Natural Disaster;
> e)  You are subpoenaed, required to serve on a jury, hijacked, **quarantined** or your travel visa is denied; (perils f – j omitted) (emphasis added)

38.    The Policy does contain a definition section, but the Policy fails to define "quarantined."    A quarantine is generally defined as "to isolate from normal relations or

communication,"[4] and "a restriction on the movement of people and goods which is intended to prevent the spread of disease or pests. It is often used in connection to disease and illness, preventing the movement of those who may have been exposed to a communicable disease, but do not have a confirmed medical diagnosis."[5]

39.    The Policy contains no applicable exclusions for viruses, pandemics, related government orders or actions taken by Vail Resorts, independently or pursuant to such government orders.

40.    The Policy defines a Loss as follows:

**LOSS**: Means your inability to use your season Ski Pass due to an unforeseen event, occurrence or circumstance.

## CAUSES OF ACTION

## Count I: Breach of Contract

41.    The preceding paragraphs 1 – 40 are incorporated by reference herein.

42.    Plaintiff and the proposed class members purchased ski pass insurance from Defendant.

43.    Each Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and proposed class members. Under these policies, Defendant was paid monies in exchange for its promise to reimburse Plaintiff should he not be able to use his ski pass the entire season.

44.    Plaintiff and the proposed class members substantially performed their obligations pursuant to the terms of the Policy and Class Policies. Plaintiff and the proposed class members complied with all applicable provisions of the Policies, including payment, and yet Defendant has

---

[4] https://www.merriam-webster.com/dictionary/quarantine
[5] https://en.wikipedia.org/wiki/Quarantine

abrogated his obligations for reimbursement.

45.   Plaintiff and the proposed class members suffered a Loss from a Covered Peril as they are defined under the Policy and Class Policies.

46.    Defendant has failed to compensate Plaintiff and proposed class members for their respective Losses as required by the Policy and Class Policies. By failing to compensate Plaintiff and the proposed class members for their respective Losses, Defendant has breached its obligations under the contract.

47.   As a direct and proximate result of Defendant's breaches, Plaintiff and the proposed class members have sustained damages that are continuing in nature in an amount to be determined at trial.

### Count II: Noncompliance with Texas Insurance Code: Unfair Settlement Practices

48.   The preceding paragraphs 1 – 47 are incorporated by reference herein.

49.   Defendant's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

50.   Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though USIC's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

51.   Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method

of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

52.     Defendant's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

53.     Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiffs' claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

<u>**Count III: Noncompliance with Texas Insurance Code:**</u>
<u>**Prompt Payment of Claims Statute**</u>

54.     The preceding paragraphs 1 – 53 are incorporated by reference herein.

55.     Plaintiff is entitled to 18% interest and attorney fees under TEX. INS. CODE §542.060 for violating the Texas Insurance Code, Prompt Payment of claims TEX. INS. CODE §542.051 et. seq.

56.     Defendant failed to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiffs all items, statements, and forms that it reasonably believed would be required within the applicable time constraints under TEX. INS. CODE §542.055.

57.     Defendant failed to notify Plaintiff in writing of its acceptance or rejection of the claim within applicable time constraints under TEX. INS. CODE §542.056.

58.     Defendant delayed the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time

provided for under TEX. INS. CODE §542.058.

59.    For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiffs are entitled to the amount of the claim, as well as 18% (eighteen percent) interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE § 542.060.

### Count IV: Breach of the Duty of Good Faith and Fair Dealing with Knowledge

60.    The preceding paragraphs 1 – 59 are incorporated by reference herein.

61.    Defendant breached the duty of good faith and fair dealing by failing to adequately and reasonably investigate and evaluate Plaintiff's claim while it knew or should have known, by the exercise of reasonable diligence, that its liability was reasonably clear.

62.    Each of the acts described above, together and singularly, were done "knowingly" as that term is used in the Texas Insurance Code.

63.    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiffs are entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiffs ask for three times their actual damages. TEX. INS. CODE § 541.152.

### Count V: Declaratory and Injunctive Relief

64.    The preceding paragraphs 1 – 63 are incorporated by reference herein.

65.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

66.    Each ski pass is a contract under which Defendant was paid monies in exchange for services with a caveat that Plaintiff would be reimbursed monies should Plaintiff not be able to use

his ski pass the entire season. Plaintiff and the class have complied with all applicable provisions of the Policies, including payment in exchange for performance. Plaintiff contends that Defendant has arbitrarily and without justification refused to reimburse Plaintiffs for their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season. Defendant breached the Policy and Class Policies by failing to timely pay Class Members for their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season.

67.    The actual case or controversy exists regarding Plaintiffs' rights and Defendant's obligations under the contract to reimburse Plaintiff and the class their respective Losses by reimbursing each member of the class for the Season Ski Pass Cost minus the applicable Daily Rate or Pro-Rata reduction (for the Epic Day Pass) for each day (or portion thereof) that the member has used his/her Season Ski Pass during the Ski/Snowboard Season. Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court to declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided in accordance with 28 U.S.C. § 2201.

68.    Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1) from continuing to engage in conduct in breach of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies including payment of all amounts due.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury.

**CONCLUSION AND PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a)   That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)   For a judgment against Defendant for the causes of action alleged against it;

(c)   For compensatory damages in an amount to be proven at trial;

(d)   For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(e)   For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(f)   For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g)   For treble damages under the Texas Insurance Code.

(h)   For Plaintiffs' attorney's fees;

(i)   For Plaintiffs' costs incurred; and

(j)   For such other relief in law or equity as the Court deems just and proper.

Dated: August 28, 2020                    Respectfully submitted,


                                          BURNETT LAW FIRM

                                          *Karen H. Beyea-Schroeder*
                                          _____
                                          Karen H. Beyea-Schroeder
                                          Texas Bar No. 24054324
                                          3737 Buffalo Speedway, 18th Floor
                                          Houston, Texas 77089
                                          Karen.schroeder@rburnettlaw.com
                                          Telephone: (832) 413-4410